**CATERPILLAR, INC. and Yancy Bros. Co., Plaintiffs,**

v.

**S.S. ENTERPRISE, etc.; and Nedlloyd (Incorporated in The Netherlands as Nedlloyd Lijnen B.V. Rotterdam), Defendants and Third–Party Plaintiffs,**

v.

**CAROLINA SHIPPING COMPANY, Third–Party Defendant.**

**Civ. A. No. 488–255.**

United States District Court, S.D. Georgia, Savannah Division.

Oct. 30, 1989.

---

Fred S. Clark, Savannah, Ga., for plaintiffs.

Robert S. Glenn, Savannah, Ga., for defendants and third-party plaintiffs.

George H. Chamlee, Savannah, Ga., for third-party defendant.

## ORDER

ALAIMO, Chief Judge.

Caterpillar, Inc. ("Caterpillar"), brought suit for breach of contract against Nedlloyd, the owner and operator of a number of ocean-going vessels, following an incident which resulted in damage to goods entrusted to Nedlloyd by Caterpillar. Carolina Shipping Company ("Carolina"), the stevedore hired by Nedlloyd to unload the goods, was impleaded as a third-party defendant. Nedlloyd and Carolina filed motions for partial summary judgment on the issue of damages. They assert that, should the Court find either of them liable, the five hundred dollar per package limitation provided in Section 4(5) of the United States Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. § 1304(5) (1973), restricts Caterpillar's recovery.

For the following reasons, the motions for partial summary judgment by Nedlloyd and Carolina on the issue of damages will be granted.

## FACTS

Caterpillar shipped two tractors, six track loaders and various accessories from Marseilles, France, to Savannah, Georgia, on the S.S. "Enterprise" under a Nedlloyd bill of lading. Each tractor and track loader was lashed to a flat metal platform known as a bolster in preparation for shipment. During discharge of the goods in Savannah, one of the track loaders dropped into the hold of the ship and struck one of the tractors.

The resulting damage to the tractor and track loader forms the basis of Caterpillar's claim against Nedlloyd. Carolina acted as the contract stevedore handling the discharge. Nedlloyd therefore impleaded Carolina, asserting the right to indemnity and/or contribution for any liability arising from the incident.

Both Nedlloyd and Carolina allege that damage liability under these circumstances is controlled by Section 4(5) of COGSA. That section states, in pertinent part:

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

Section 4(5) of COGSA, 46 U.S.C.App. § 1304(5) (1973).

Caterpillar's recovery is subject to the limitation expressed in Section 4(5) of COGSA if the goods were "packaged" at the time of shipment, and Caterpillar was given a "fair opportunity" to declare a higher value for the goods. The facts in this case, together with the relevant clauses contained in the Nedlloyd bill of lading, indicate that the damage limitation does apply. The relevant terms of art and the caselaw dealing with them are discussed below.

## DISCUSSION

### Summary Judgment

Generally, summary judgment is appropriate where there are no issues of materi-

al fact, so that a judgment may be rendered in the movant's favor as a matter of law. Fed.R.Civ.P. 56(c). If summary judgment upon the whole case is not possible, but certain material facts are uncontroverted, a court may grant a motion by a defending party for summary judgment "as to all or any part" of a claim. Fed.R.Civ.P. 56(b).

Disputes as to the applicability of the damage limitation under Section 4(5) of COGSA are frequently resolved by partial summary judgment. In the case of *Tamini v. Salen Dry Cargo AB*, 866 F.2d 741 (5th Cir.1989), the court rejected the defendants' assertion that the determination of whether the goods were "packaged" raised a disputed issue of material fact which must be submitted to a jury. The Fifth Circuit Court cited its earlier decision in *Nunez v. Superior Oil Company*, 572 F.2d 1119 (5th Cir.1978), a case which is binding precedent in this jurisdiction, to support its affirmance of the lower court's decision to treat the issue as one for summary judgment. The court in *Tamini* stated:

> If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved. Under those circumstances, which may be rare, the judge who is also the trier of fact may be warranted in concluding that there was or was not [a package], ... even if that conclusion is deemed 'factual'.... The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.

*Tamini, supra* at 742. Summary judgment on the issue of the applicability of Section 4(5) of the COGSA is particularly appropriate in the case at bar, because even Caterpillar does not seem to dispute the fact that the goods were in packages at some point in time.

## Shipment by Package

In the case of *Hayes–Leger Associates v. M/V Oriental Knight*, 765 F.2d 1076 (11th Cir.1985), the Eleventh Circuit adopted a definition of the term "package" for purposes of Section 4(5) of COGSA which was set forth by the Second Circuit Court in *Aluminos Pozuelo, Ltd. v. S.S. Navigator:*

> The meaning of 'package' which has evolved from the cases can therefore be said to define a class of cargo, irrespective of size, shape or weight, to which some packaging preparation for transportation has been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods.

*Aluminos Pozuelo, Ltd. v. S.S. Navigator*, 407 F.2d 152, 155 (2d Cir.1968). In *Aluminos*, the court found that a toggle press with skids attached to the bottom was "packaged" and applied the damage limitation derived from Section 4(5) of COGSA.

■ Similarly, all the parties in the case at bar acknowledge that the attachment of bolsters to each of the tractors and track loaders that Nedlloyd was hired to ship constituted packaging of the goods. The issue on which the parties disagree is whether the limitation on liability imposed by Section 4(5) of COGSA is rendered inapplicable because the track loader that was damaged fell off its bolster during discharge.

The very language of Section 4(5) of COGSA indicates that a determination as to whether goods should be considered packaged for purposes of applying the damage limitation is based upon the condition of the goods at the time of shipment. The second clause of Section 4(5) speaks of "goods not shipped in packages." From this, one could reasonably infer that the first clause which addresses the situation where goods are packaged is referring to *the time of shipment*. Furthermore, the alternative measure of damages provided for in Section 4(5) of the statute requires a valuation of the goods by the shipper *before shipment*. Thus, it appears that the only time mentioned with respect to the applicability

of the damage limitation is the time of shipment, not the time at which the damage occurs, as alleged by Caterpillar.

The caselaw interpreting Section 4(5) also refers to goods shipped or not shipped in packages. *See, e.g., Hayes–Leger Associates v. M/V Oriental Knight, supra; Aluminios Pozuelo, Ltd. v. S.S. Navigator, supra.* The issue is discussed in some detail by the court in *Mediterranean Marine Lines v. John T. Clark & Sons,* 485 F.Supp. 1330 (D.Md.1980). There, as in this case, it was uncontested that the goods were originally in packages, but at some point during the loading of the vessel at least part of the packaging was removed. The court rejected the shipper's contention that the damage limitation was lifted when the goods became unpackaged and held that: "Whether or not at a later date the goods became uncovered is not material in determining whether they constituted a COGSA package when delivered to the carrier." *Mediterranean Marine Lines, supra* at 1339.

Finally, the dictates of logic indicate that the applicability of the damage limitation must be based upon the characterization of the goods at the time when arrangments for shipping are being made. It is at that time that the shipper has some choice in the degree of protection he desires to have for his goods. The evidence presented by the parties suggests that a declaration of a higher value for goods by the shipper usually results in a higher freight rate. It appears that Caterpillar chose not to incur the additional costs. The fact that Caterpillar's goods may have become unpackaged at some point after they were put into Nedlloyd's custody, but before they were completely discharged from the vessel, has no bearing on the damage limitation per package provided by Section 4(5) of COGSA.

Because the Court has determined that the goods shipped for Caterpillar by Nedlloyd were "packaged" within the meaning ascribed to that term for purposes of applying Section 4(5) of COGSA, the customary freight unit system, also mentioned in the statutory provision for limited liability, will not be discussed.

*Fair Opportunity to Declare a Higher Value of Goods*

As previously mentioned, shippers have a statutory right to avoid the limit on damage recovery by declaring a higher value for the goods being shipped. Cases which discuss the matter indicate that the shipper must be given a "fair opportunity" to do so. *See, e.g., Nemeth v. General Steamship Corp., Ltd.,* 694 F.2d 609 (9th Cir. 1982); *Wuerttembergische and Badische Versicherungs–Aktiengesellschaft v. M/V Stuttgart Express,* 711 F.2d 621 (5th Cir. 1983); *Brown & Root, Inc. v. M/V Peisander,* 648 F.2d 415 (5th Cir.1981). The cases diverge, however, on the issue of exactly what constitutes a fair opportunity.

■ The law in this jurisdiction is set forth in the case of *Brown & Root, Inc. v. M/V Peisander, supra.* There, the shipper was deemed to have been provided a fair opportunity to declare value by the bill of lading, which referred directly to the damage limitation of Section 4(5) of COGSA and to the published tariff which supplied the shipper with a number of options that would increase the carrier's liability. The Fifth Circuit Court expressly rejected the requirement adopted by the Ninth Circuit that the bill of lading must contain a specific space for declaration of value. *See Pan Am World Airways v. California Stevedore & Ballast Co.,* 559 F.2d 1173 (9th Cir.1977). Thus, Caterpillar's contention that the absence of such a space in Nedlloyd's bill of lading denied him a fair opportunity to avoid the limitation necessarily fails.

Upon close examination of the bill of lading at issue, it appears that Nedlloyd gave ample notice to Caterpillar of the existence of the damage limitation and the alternatives available. Clause 27 states that the bill of lading is subject to COGSA and makes particular mention of the dam-

age limitation. The clause also recognizes the exception to the limitation on liability which arises when the value of the goods has been declared by the merchant.[1] Clause 7(3) of the bill of lading discusses in further detail the arrangements which may be made to avoid the liability limitation.[2]

In addition, Nedlloyd has set forth the various options available to shippers and the freight rates for each, depending on destination, in the public tariff which is on file with the Federal Maritime Commission. The tariff is expressly incorporated by reference into the bill of lading. The combination of the tariff and the bill of lading clearly presents Caterpillar with a fair opportunity to escape the $500 damage limitation by declaring a higher value for his goods and paying any additional freight costs. The law in this jurisdiction requires nothing further on the part of the carrier.

CONCLUSION

Having determined that Caterpillar's goods were in packages at the relevant time and that Caterpillar was given a fair opportunity to declare value for the goods in accordance with the terms of the tariff and the bill of lading, the Court finds that the damage limitation in Section 4(5) of COGSA applies in this case to restrict Caterpillar's recovery to $500 per damaged package. Accordingly, the motions by Nedlloyd and Carolina for partial summary judgment are GRANTED. The Clerk of the Court is directed to enter an appropriate judgment.

SO ORDERED.

1. The bill of lading in Clause 27 provides:
   If this Bill of Lading covers the Carriage of Goods to or from ports of United States of America, this Bill of Lading shall be subject to United States Carriage of Goods by Sea Act, which shall be incorporated herein, and the provisions of said Act shall govern before loading and after discharge and throughout the entire time the Goods are in the custody of the Carrier. If anything herein contained be invalid or unenforceable under the provisions of said Act, such circumstances shall not affect the validity or enforceability of any other part or term of this Bill of Lading. The Carrier shall not be liable in any capacity whatsoever for loss, damage or delay of or to the Goods while the Goods are not in his actual custody.
   Special mention is made of Section 1304(5) of U.S.A. COGSA providing that the Carrier's and/or the vessel's liability shall not exceed US $500 per package or customary freight unit unless the nature and the value of the Goods have been declared, in which case Clause 7(3) applies.

2. Clause 7(3) of the bill of lading states:
   Ad Valorem
   The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods and that higher compensation than that provided above may not be claimed unless with the consent of the Carrier the value of the Goods declared by the Shipper prior to the commencement of the Carriage is stated on this Bill of Lading and extra Freight paid, if required. In that case, the amount of the declared value shall be substituted for the limits laid down above. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value.