Marco REALINI individually and
f/u/b/o Royal Marine Yacht
Underwriters, Plaintiff,

v.

CONTSHIP CONTAINERLINES,
LTD., Defendant.

No. 97–0104–CIV.

United States District Court,
S.D. Florida.

July 7, 1999.

Michael Charles Black, William E. Cassidy, Miami, FL, for Marco Realini, individually and f/u/b/o/ Royal Marine Yacht Underwriters, plaintiffs.

Thomas Vincent Halley, Halley & Halley, Key Biscayne, FL, for Contship Containerlines, Ltd., defendants.

## ORDER

NESBITT, District Judge.

This cause comes before the Court upon Magistrate Judge Barry L. Garber's Order Granting Plaintiff's Motion for Partial Summary Judgment as to Liability, filed August 17, 1998 (D.E.# 31), which relates to Plaintiff's Motion for Partial Summary Judgment as to Liability (D.E.# 16); Magistrate Judge Garber's Report and Recommendation, filed November 6, 1998 (D.E.# 37), regarding Defendant's Motion for Partial Summary Judgment as to damages (D.E.# 14); and Defendant's Motion

1.  COGSA "governs a carrier's duty from the time of loading to the time of discharge; the Harter Act governs a carrier's duty from the time of discharge to the time of delivery."

for Extension of Time to Complete Mediation (D.E.# 40).

## BACKGROUND

On approximately November 18, 1996, Plaintiff Marco Realini, individually and f/u/b/o Royal Marine Yacht Underwriters ("Realini"), commenced this action in Dade County Circuit Court.

On approximately November 16, 1995, Defendant Contship Containerlines, Ltd. ("Contship") received certain cargo for transportation from Italy to Miami, Florida. The cargo consisted of Realini's 43-foot yacht "and all of its engines, equipment, appurtenances, etc." Complaint, ¶ 6. Contship received the cargo in good condition, but delivered it to its Miami destination in a damaged condition. Realini demands $21,435.23 in damages based on three legal theories: negligence, breach of bailment, and breach of contract of carriage.

On January 15, 1997, Contship removed the action to this Court because Realini's claims for loss of or damage to cargo during maritime transportation arise under the Carriage of Goods by Sea Act, 46 U.S.C.App. §§ 1300–15 ("COGSA"), or the Harter Act, 46 U.S.C.App. § 190–96.[1]

## DISCUSSION

*Summary judgment standard*

A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Maniccia v. Brown,* 171 F.3d 1364, 1367 (11th Cir.1999); *Campbell v. Sikes,* 169 F.3d 1353, 1361 (11th Cir.1999). The

*Crowley American Transp., Inc. v. Richard Sewing Machine Co.,* 172 F.3d 781, 785 n. 6 (11th Cir.1999).

movant bears the initial responsibility of informing the Court of the basis for its motion and of identifying those materials which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In response to a properly supported motion for summary judgment, "the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts which show a genuine issue for trial." Fed.R.Civ.P. 56(e). If the non-moving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the Court must enter summary judgment for the moving party. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. The Court, however, must view the evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Maniccia,* 171 F.3d at 1367.

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis added). The Court is not to resolve factual issues, but may only determine whether factual issues exist. A material fact is one which "might affect the outcome of the suit under the governing law...." *Id.* at 248, 106 S.Ct. at 2510. Therefore, the inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

*Applicability of COGSA*

The parties agree that COGSA governs Realini's claims. As Magistrate Judge Garber noted, however, COGSA does not apply by its own terms, but instead applies only by virtue of its incorporation in the relevant bill of lading. *See* Report and Recommendation, at 5–6.

■ In general, COGSA "applies compulsorily 'to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade.'" *Itel Container Corp. v. M/V "Titan Scan",* 139 F.3d 1450, 1452–53 (11th Cir.1998) (quoting 46 U.S.C.App. § 1312). COGSA does not apply, however, to "cargo which by the contract of carriage is stated as being carried on deck and is so carried." 46 U.S.C.App. § 1301(c).

■ The bill of lading which Contship issued stated that the yacht would be shipped on deck, *see* Bill of Lading (attached as an exhibit to Defendant's Motion for Partial Summary Judgment, D.E. # 14), and for purposes of this Motion the parties do not dispute that the yacht was in fact shipped on deck. COGSA, therefore, does not apply by its own terms. *See, e.g., Institute of London Underwriters v. Sea–Land Serv., Inc.,* 881 F.2d 761, 764 (9th Cir.1989) ("It is beyond dispute that COGSA itself does not apply to the on-deck shipment of the yacht."); *General Motors Corp. v. Moore–McCormack Lines, Inc.,* 451 F.2d 24, 25 n. 1 (2d Cir.1971) (COGSA did not apply by its own terms to generators carried on deck); *Z.K. Marine, Inc. v. M/V Archigetis,* 776 F.Supp. 1549, 1553 (S.D.Fla.1991) ("COGSA ... does not directly apply to this case because the yachts were carried on deck."), *clarified on denial of reconsideration,* 808 F.Supp. 1561 (S.D.Fla.1992); *Sail Am. Foundation v. M/V T.S. Prosperity,* 778 F.Supp. 1282, 1285 (S.D.N.Y.1991).

Despite the fact that COGSA does not apply by its own terms, a bill of lading may include a paramount clause which "makes COGSA applicable at times when it would not apply of its own force." *Ins. Co. of N. America v. M/V Ocean Lynx*, 901 F.2d 934, 939 (11th Cir.1990); *see also, e.g., Brown and Root, Inc. v. M/V Peisander*, 648 F.2d 415, 419–20 (5th Cir. June 19, 1981). The bill of lading which governed the transportation of Realini's yacht provides that Contship's liability shall be determined pursuant to COGSA. *See* Bill of Lading, § 3(b). COGSA therefore governs Realini's claims.

*Motion for Summary Judgment as to Liability*

Realini contends that he is entitled to summary judgment as to Contship's liability. In its Response (D.E.# 26) and the affidavit of O. Fred Barron which it filed (D.E.# 23, 27), Contship does not dispute that Realini is entitled to summary judgment as to liability.

Because Realini's entitlement to summary judgment as to Contship's liability is undisputed, on August 17, 1998 (D.E.# 31), Magistrate Judge Garber granted Realini's Motion for Partial Summary Judgment as to Liability. Because the Motion which Magistrate Judge Garber's August 17, 1998 Order addressed was a Motion for Summary Judgment, however, the Court will treat that Order as a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(A) & (B).

Neither party objected to the Magistrate Judge's August 17 Order, and Contship has never disputed that Realini is entitled to summary judgment as to liability. Additionally, upon a *de novo* review the Court finds that Realini is entitled to summary judgment as to Contship's liability.

■ Under COGSA, Realini may establish "a prima facie case by proving that the carrier received the cargo in good condi-

tion, but unloaded it in a damaged condition at its destination." *Hale Container Line, Inc. v. Houston Sea Packing Co.,Inc.*, 137 F.3d 1455, 1468 (11th Cir. 1998). Realini has submitted to the Court unrebutted evidence that Contship received the cargo in good condition, but unloaded it in Miami in damaged condition. Specifically, Realini has submitted copies of his Request for Admissions and Contship's Response to his Request for Admissions. *See* Motion for Partial Summary Judgment as to Liability, D.E. # 16, Ex. A (Defendant's Response to Plaintiff's Request for Admissions) and Ex. B (Plaintiff's Request for Admissions). In that Response, Contship admitted that it "received the subject cargo in good order and sound condition[,]" D.E. # 16, Exs. A & B, ¶ 3, that the "cargo arrived at its destination with damages[,] ... was damaged during the ocean voyage[,] ... [and] was damaged while in the care, custody and control of [Contship]." *Id.*, ¶¶ 7–9. Realini therefore established a prima facie case under COGSA.

Because Realini established a prima facie case, "the burden shift[ed] to [Contship] to prove that it either exercised due diligence to prevent damage to the cargo by handling, stowing, and carrying the cargo in a seaworthy ship, or that the harm resulted from an 'uncontrollable' cause of loss as statutorily defined [in 46 U.S.C.App. § 1304(2) ]." *Hale Container Line*, 137 F.3d at 1468; *see Sony Magnetic Prods. Inc. of America v. Merivienti O/Y*, 863 F.2d 1537, 1539 (11th Cir.1989); *Terman Foods, Inc. v. Omega Lines*, 707 F.2d 1225, 1227 (11th Cir.1983). Contship submitted no evidence and presented no argument to suggest that it met its burden of proof. Because Contship did not meet its burden, the burden of proof did not shift back to Realini, *see Terman Foods*, 707 F.2d at 1227, and Realini is entitled to

summary judgment on the issue of Contship's liability.

*Motion for Summary Judgment as to Damages*

Contship contends that its liability for the damage to Realini's yacht is limited to $500.00. Magistrate Judge Garber recommends that the Court grant Contship's Motion for Summary Judgment and find that Contship's liability is limited to $500.00. Specifically, Magistrate Judge Garber concluded that: (1) the $500.00 per package limitation of liability contained in the bill of lading is valid and enforceable; and (2) Realini's yacht constituted one package for purposes of limiting Contship's liability.

Realini does not object to Magistrate Judge Garber's conclusion that the $500.00 limitation of liability is valid and enforceable. *See* Plaintiff's Objections, D.E. # 36. The Court agrees with the Magistrate Judge's conclusion as to this issue.

■ COGSA limits a carrier's liability to "$500 per package ... or in the case of goods not shipped in packages, per customary freight unit ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading." 46 U.S.C.App. § 1304(5). Contship was entitled to invoke COGSA's $500.00 limitation of liability provided that it (1) gave the shipper adequate notice of the limitation by including in the bill of lading a paramount clause that expressly adopted COGSA's provisions, and (2) gave the shipper a fair opportunity to avoid the limitation of liability by declaring excess value. *See, e.g., Unimac Co. v. C.F. Ocean Service, Inc.,* 43 F.3d 1434, 1438 (11th Cir.1995);

*Insurance Co. of N. Am. v. M/V Ocean Lynx,* 901 F.2d 934, 939 (11th Cir.1990); *Brown & Root, Inc. v. M/V Peisander,* 648 F.2d 415, 420 (5th Cir. June 19, 1981).

Contship gave the shipper adequate notice of the $500.00 limitation because, as discussed *supra,* the bill of lading contained a paramount clause which expressly adopted COGSA's provisions. *See* Bill of Lading, § 3(b). Additionally, the bill of lading provided the shipper with the opportunity to declare a higher value for the goods being shipped and to pay a higher freight charge in order to avoid the limitation of liability.[2] *See* Bill of Lading, at 1. The Court therefore concurs with Magistrate Judge Garber's conclusion that the $500.00 limitation of liability is valid and enforceable.[3]

Realini does object to the Magistrate Judge's conclusion that the yacht constituted one "package." Specifically, Realini contends that: (1) there is a factual issue as to whether the yacht was packaged for transportation; (2) even if the yacht were packaged, there is a question of fact as to whether the shipper (which is not a party to this action) or Contship packaged the yacht; (3) there is a question of fact as to whether items referenced in a list attached to the bill of lading constituted separate packages; and (4) there is a question of fact as to how the "flat-rate freight was determined." Objections, D.E. # 36, at 3.

Realini first asserts that there is insufficient evidence to demonstrate that the yacht was packaged for transportation. If the yacht was not packaged, then COGSA limits Contship's liability to $500.00 per

---

**2.** It is undisputed that the shipper did not declare and insert in the bill of lading the nature and value of the goods.

**3.** Because COGSA's $500.00 limitation of liability is valid and enforceable, the Court does not need to determine the enforceability of a separate clause in the bill of lading which also contains a $500.00 limitation of liability. *See* Bill of Lading, ¶ 24(c)1.

customary freight unit, not $500.00 per package. *See* 46 U.S.C.App. § 1304(5).

Congress did not define the term "package" as used in COGSA, and therefore "the task of defining and applying the term has fallen to the courts." *Hayes–Leger Assocs., Inc. v. M/V Oriental Knight,* 765 F.2d 1076, 1079 (11th Cir. 1985). Although Congress did not define the term "package," the bill of lading provides that "[a] yacht shall be deemed a single PACKAGE." Bill of Lading, ¶ 1(u). A preliminary reading of this section of the bill of lading would seem to dictate that the yacht was a package, thereby limiting Contship's liability to $500.00 for any damage to the yacht.

■ However, although the parties' characterization of the yacht as a package may be relevant to the Court's determination, that provision of the bill of lading is not enforceable if it is inconsistent with COGSA and lessens Contship's liability in a manner for which COGSA does not provide. *See* 46 U.S.C.App. § 1303(8) ("Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods ... or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect."); *Middle East Agency v. The John B. Waterman,* 86 F.Supp. 487, 491 (S.D.N.Y.1949) ("Any attempt by the carrier to modify the limitation provisions of [COGSA] through a printed provision of a bill of lading should be carefully scrutinized by the courts."); *cf. Tamini v. Salen Dry Cargo AB,* 866 F.2d 741, 743 (5th Cir.1989) (Certificate of Origin which denoted "1" as the number of packages "is, of course, not determinative."); *Binladen BSB Landscaping v. M.V. "Nedlloyd Rotterdam",* 759 F.2d 1006, 1016 n. 11 (2d Cir.1985) ("[P]revious cases have held that the number entered in the package column on the bill of lading

is not itself determinative of the number of COGSA packages ....."). The Court therefore must determine whether defining the yacht as a package is consistent with COGSA.

■ Magistrate Judge Garber concluded that the yacht is a "package" under COGSA. *See* Report and Recommendation, at 8–10. The Magistrate Judge noted that the yacht was stored on two forty-foot flatracks, and concluded that the Survey Report which Realini attached as Exhibit B to his Motion for Summary Judgment (D.E.# 16) described the elaborate "packaging" of the yacht.

The parties agree with Magistrate Judge Garber that the yacht was stored on two forty-foot flatracks. *See, e.g.,* Realini's Response, D.E. # 18, at 2; Report and Recommendation, at 3. Additionally, Realini does not dispute the Magistrate Judge's factual findings, which were based on the Survey Report, that the loading of the yacht took four to six hours, the yacht was lashed with steel wires, turnbuckles, clamps, and nylon slings, and the yacht was covered with tarpaulin after being positioned on its wooden cradle. *See* Report and Recommendation, at 10; Survey ¶¶ 3.2, 3.4, 3.5.

Realini, however, disputes the Magistrate Judge's characterization of Contship's preparation of the yacht for shipping as "elaborate packaging ...." Report and Recommendation, at 9. Realini instead contends that the procedures Contship used, including the lashing of the yacht and covering it with a tarpaulin, did not constitute *packaging* of the yacht by the shipper, but instead were part of the *loading* process performed by the carrier.

Realini points to the fact that the yacht was delivered by water to Contship, and was not packaged before it was delivered to Contship. *See* Objections to the Report and Recommendation, D.E. # 36, at 2, 4.

Realini suggests that when all preparations for ocean transportation, such as cradling and lashing, are done by the carrier (i.e. Contship) and not the shipper, "the yacht should not be considered a package for COGSA purposes . . . ." Objections, at 4.

Realini has not cited any authority supporting this contention, and Contship has cited no authority in opposition. The Court, however, has found an American Law Report annotation which may support Realini's contention. That annotation cites several cases which the parties did not present to the Court, and suggests "that, while not conclusive, preparation of goods for shipment by the shipper [as opposed to the carrier] is one factor which can be considered in determining whether such goods constituted a 'package' within the meaning of COGSA." *What constitutes 'package' or 'customary freight unit' within limitation of liability provision of Carriage of Goods by Sea Act (46 U.S.C.A. § 1304(5)),* 27 A.L.R. Fed. 661, § 15 (Comment) (1976 & Supp.1997).

The parties' failure to adequately brief this issue precludes the entry of summary judgment. The Court therefore will deny Contship's Motion for Summary Judgment and allow the parties to more thoroughly brief this legal issue in their proposed findings of fact and conclusions of law which they are required to submit prior to the non-jury trial of this action. *See, e.g., Mathis v. New York Life Ins. Co.,* 133 F.3d 546, 548 (7th Cir.1998) (" 'A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority . . . forfeits the point. We will not do his research for him.' ") (quoting *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990)); *United States v. Callwood,* 66 F.3d 1110, 1115 n. 6 (10th Cir.1995).

The Court also notes that Realini's yacht was transported on flatracks and on wooden cradles. The parties have not, however, presented to the Court evidence or argument as to exactly what flatracks and cradles are, or how they differ from or are similar to skids and wooden saddles. The parties also have not clarified this issue by citing any decisions which refer to or discuss flatracks. The only decisions to which the parties have directed the Court and which address whether cargo constituted a "package" have involved yachts or other cargo shipped on skids, wooden saddles, or cradles, but not flatracks. *See, e.g., Aluminios Pozuelo Ltd. v. S.S. Navigator,* 407 F.2d 152, 153 (2d Cir.1968); *Taiwan Power Co. v. M/V George Wythe,* 575 F.Supp. 422, 423–24 (N.D.Fla.1983); *Z.K. Marine, Inc. v. M/V Archigetis,* 776 F.Supp. 1549, 1555 (S.D.Fla.1991) (Collecting cases involving skids and noting that cradles are "analogous, for purposes of the package analysis, to skids."); *Marante Forwarding v. C.A. Naviera De Transporte Y Turismo,* 486 F.Supp. 636, 637 (S.D.Fla.1980); *cf. Caterpillar Americas Co. v. S.S. Sea Roads,* 231 F.Supp. 647, 649 (S.D.Fla.1964) ("The tractor was delivered . . . and shipped . . . in a 'loose' condition. That is, it was not boxed, crated or put on skids . . . . It is clear upon these facts that the tractor was not a 'package' . . . ."), *aff'd,* 364 F.2d 829, 829 (5th Cir.1966) ("We are in accord with the views expressed in the able opinion of the district court . . ., and on the basis of that opinion we accordingly Affirm."). Absent such information from the parties regarding the exact nature of the flatracks, the Court will not grant summary judgment on the issue of whether the yacht constituted a package.

Magistrate Judge Garber also concluded that the shipment consisted of only one package, i.e. Realini's yacht. Realini objects to this conclusion on two grounds.

First, Realini suggests that the two flatracks should be considered separate packages. *See* Objections, at 6. As noted *supra*, the parties have failed to adequately apprise the Court of the nature of the flatracks, and how flatracks differ from or are similar to cradles, skids, or saddles. Without such information, the Court cannot adequately address Realini's objection.

Second, Realini contends that a list attached to the bill of lading demonstrates that several additional items of equipment were shipped with the yacht, each of which may constitute a separate package. The bill of lading lists the yacht as the "break bulk cargo", and states that the yacht's details are "as per attached list". Bill of Lading, at 1. The list which is attached to the bill of lading is entitled "EXTRA EQUIPMENT". *See* Plaintiffs' Response, D.E. # 18, Ex. A.

Magistrate Judge Garber concluded that the list of extra equipment describes features of the yacht, not separate equipment which was shipped in addition to the yacht. *See* Report and Recommendation, at 11–12. Realini contends that Magistrate Judge Garber erred by making this determination "without testimony and *evidence* ...." Objections, at 6 (emphasis added).

Contrary to Realini's suggestion, the bill of lading itself and the list attached to it are *evidence* which the Court may consider in determining whether the "Extra Equipment" constituted parts of the yacht or items separate from the yacht. Realini could have submitted evidence clarifying whether the extra equipment was part of the yacht, but he chose not to.

A review of the "Extra Equipment" list supports Magistrate Judge Garber's conclusion that the listed items are parts of the yacht, not separate items. For example, the list describes items such as "Internal sockets [A]merican type", "Version 2 cabins", "Sundeck cushions aft", and "Air conditioning". D.E. # 18, Ex. A. It would

be more appropriate, however, for the Court to determine whether all items on the list were parts of the yacht or separate items *after* the Court hears all of the parties' evidence at the non-jury trial of this action.

Because the Court will deny Contship's Motion for Summary Judgment on these grounds, the Court will not address Realini's assertion that there is a factual question regarding how the "flat-rate freight was determined." Objections, D.E. # 36, at 3.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Magistrate Judge Barry L. Garber's Order Granting Plaintiff's Motion for Partial Summary Judgment as to Liability (D.E.# 31) is **AFFIRMED.**

2. Plaintiff's Motion for Partial Summary Judgment as to Liability (D.E.# 16) is **GRANTED.**

3. Defendant's Motion for Partial Summary Judgment as to damages (D.E.# 14), is **DENIED.**

4. Defendant's Motion for Extension of Time to Complete Mediation (D.E.# 40) is **GRANTED** *nunc pro tunc* to April 16, 1999.

5. Despite the fact that the parties requested an extension of time until only April 16, 1999 to attend a mediation conference, the parties have not informed the Court that they have participated in mediation. The parties therefore shall have until and including *July 12, 1999,* in which to show cause why the Court should not impose sanctions, including but not limited to dismissal of this action, for the parties' failure to comply with the Court's August 28, 1998 Order of Referral to Mediation (D.E.# 32).

## REPORT AND RECOMMENDATION

GARBER, United States Magistrate Judge.

THIS CAUSE is before the Court on Defendant's Motion for Partial Summary Judgment Against Plaintiff Marco Realini, pursuant to an Order of Reference entered by United States District Judge Lenore C. Nesbitt. A hearing was held on this Matter on August 11, 1998. At that hearing, the Court granted Plaintiff's Motion for Partial Summary Judgment as to liability. The remaining issue before the Court is whether Defendant's liability is limited to $500 as a matter of law. The Court finds that under the terms of the Bill of Lading and the Carriage of Goods by Sea Act ("COGSA"), 46 App. U.S.C. § 1300, *et seq.*, Defendant's liability is limited to $500. Accordingly, partial summary judgment in favor of Defendant should be granted.

## STANDARD OF REVIEW

The procedure for disposition of a summary judgment motion is well established. Summary judgment is authorized only when: the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The party moving for summary judgment has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In applying this standard, the *Adickes* Court explained that when assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Id.*

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-

moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### UNDISPUTED FACTS

Plaintiff seeks compensation for damages that occurred when its yacht was being shipped from La Spezia, Italy to Miami, Florida aboard Defendant's vessel, M/V CONTSHIP AMERICA. Defendant received the cargo in good condition and provided the ocean transportation of the subject cargo. The export freight invoice reveals that the carrier charged a flat rate of $13,000 to ship the yacht, which was described as one unit of seafreight. The yacht was shipped on two 40-foot flatracks and was damaged prior to its arrival in Miami. On August 17, 1998, this Court issued an Order granting Plaintiff's Motion for Summary Judgment as to Liability.

### TERMS OF THE BILL OF LADING

The Bill of Lading states on its face that the yacht was "shipped on deck at shippers' risk." (*See* Defendant's Motion For Partial Summary Judgment, Ex. A (hereinafter the "Bill of Lading")). Describing the goods to be shipped, the Bill of Lading lists one yacht "Baia 43" and "DETAILS AS PER ATTACHED LIST." On the back of the Bill of Lading, it states that damages or losses are limited to $500.00 per package or customary freight unit, (Bill of Lading, ¶ 24.c), but on its face, it provides the Merchant with an opportunity to enter the actual value of the goods and pay an ad valorem rate in order to avoid this limitation on liability. No value was declared on the face of the Bill of Lading which provided an empty box for "the declared value of goods." No ad valorem fee was paid. Finally, the Bill of Lading explicitly states that "a yacht shall be deemed a single package," (*see* Bill of Lading, ¶ 1.u), and is silent regarding the total number of packages shipped.

The Bill of Lading also provides the following standard terms:

1. . . . (k) GOODS: means the cargo accepted from the MERCHANT and including any CONTAINER, pallet or similar article of transport or packaging . . .

(u) PACKAGE: means: (1) the container when the GOODS are shipping in a CONTAINER; . . . . A yacht shall be deemed a single PACKAGE . . . .

24 . . . (c) The CARRIER's liability shall be limited as follows:

1. On Shipments To or From the United States. The CARRIER shall not be liable for any LOSS or damage to or in connection with the GOODS in an amount exceeding the limit of US$500.00 per package or, where GOODS are not shipped in packages, per customary freight unit regardless of whether COGSA applies.

The paramount clause provides

(b) To or From Ports of the United States. If the CARRIAGE called for in this BILL OF LADING is a shipment to or from the United States, the liability of the Carrier shall be exclusively determined pursuant to COGSA; Section 101 of the Pomerene Act [49 U.S.C.]; and Article 7–203 of the Uniform Commercial Code. The provisions cited in the Hague Rules and COGSA shall also govern before the GOODS are loaded on and after they are discharged from the VESSEL and throughout the entire time the GOODS are in the actual custody of the CARRIER.

### STATUTORY PROVISIONS

The parties contend that COGSA controls the resolution of this Matter. COGSA contains the following provisions:

The term "goods" includes goods, wares, merchandise, and articles of every kind

whatsoever, except live animal and cargo which by the contract is stated as being carried on deck and is so carried.

46 U.S.C.App. § 1301(c).

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ... or in the case of goods not shipped in packages, per customary freight unit ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

46 U.S.C.App. § 1304(5). The term "package" is not defined by the statute.

Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods ... or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect.

46 U.S.C.App. § 1303(8).

## DISCUSSION

### I. COGSA's Applicability To This Dispute.

The Court cannot apply COGSA by its own terms because COGSA only pertains to the shipment of goods as defined by the Act. COGSA defines "goods" as including "goods, wares, merchandise and articles of every kind whatsoever, *except* live animals and cargo which by the contract of carriage is stated as being *carried on deck and is so carried.*" 46 U.S.C.App. § 1301(c)(emphasis added). The Bill of Lading indicated that the yacht was to be "shipped on deck at shippers' risk," and the parties do not contend that the yacht was shipped in any manner other than on deck. Accordingly, COGSA does not apply of its own force. *See Z.K. Marine, Inc. v. M/V Archigetis,* 776 F.Supp. 1549 (S.D.Fla.1991) (COGSA is inapplicable, in

absence of contrary agreement, to yachts shipped pursuant to a contract specifying on-deck carriage), clarified on denial of reconsideration, 808 F.Supp. 1561 (S.D.Fla.1992); *Sail Am. Found. v. M/V T.S. Prosperity,* 778 F.Supp. 1282, 1285 (S.D.N.Y.1991) (citing cases); *Enterprise Inc. v. M/V Sam Houston,* 706 F.Supp. 451, 452 (E.D.La.1988).

Although COGSA by its own terms does not apply to the shipment of the yacht, COGSA may still be applicable if the parties expressly incorporated the statute's provisions in the contract. *Sail Am. Found.,* 778 F.Supp. at 1286. The paramount clause contained in the Bill of Lading specifically incorporates COGSA for purposes of determining liability where the cargo is shipped to or from a port in the United States. (Bill of Lading, ¶ 3.b). Accordingly, COGSA applies to this determination and overrules any clause in the Bill of Lading that conflicts with the Act. *Insurance Co. of N. Am. v. M/V Ocean Lynx,* 901 F.2d 934, 939 (11th Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991).

### II. The Limitation of Liability Included in the Bill of Lading Is Valid and Enforceable.

Before it can invoke the liability protection provided in 46 U.S.C.App. § 1304(5), a carrier must meet two preconditions. First, the carrier must give the shipper adequate notice of the $500 limitation on liability by including a paramount clause that expressly adopts the provisions of COGSA. *M/V Ocean Lynx,* 901 F.2d at 939; *Brown & Root, Inc. v. M/V Peisander,* 648 F.2d 415, 420 (5th Cir. June 19, 1981). Second, the carrier must give the shipper a fair opportunity to avoid the limitation of liability by declaring excess value. *Ocean Lynx,* 901 F.2d at 939; *Brown & Root,* 648 F.2d at 420 & n. 11. Both conditions have been met in this instance. *See Unimac Co. v. C.F. Ocean*

*Serv., Inc.,* 43 F.3d 1434, 1438 (11th Cir. 1995)("a carrier has limited liability providing that the carrier gives the shipper adequate notice of the $500 limitation by including a clause paramount in the bill of lading and the carrier gives the shipper a fair opportunity to avoid COGSA's limitation by declaring excess value.").

First, the paramount clause in the Bill of Lading specifically states that "[i]f the CARRIAGE called for in this BILL OF LADING is a shipment to or from the United States, the liability of the Carrier shall be exclusively determined pursuant to COGSA." (*See* Bill of Lading ¶ 3(b)). Although not required, the paramount clause refers to COGSA by name and puts the shipper on notice regarding the limitation of liability. Second, the face of the Bill of Lading clearly indicates that the shipper can declare a higher value for the goods being shipped and pay a higher freight in order to avoid the limitation on liability. (*See* Bill of Lading at 1).

Where a party demonstrates that the shipper was given a fair opportunity to declare a higher value and pay a higher freight to avoid the limitation, the burden shifts to the shipper to demonstrate that such a fair opportunity did not exist. *Id.; see also Vistar, S.A. v. M/V Sealand Express,* 680 F.Supp. 855, 857–58 (S.D.Tex. 1987) (finding no unfairness in limiting liability to $500 where shipper chose not to declare higher value); *see also Heri v. Fritz Cos.,* 841 F.Supp. 1188, 1192 (N.D.Ga.1993) (no requirement that limita-

tion be printed in larger print)(citing *M/V Ocean Lynx,* 901 F.2d at 940). Under COGSA, the shipper has the burden of declaring the value of its goods and paying a higher price if it wants to have greater liability placed on the carrier. *Hale Container Line, Inc. v. Houston Sea Packing Co.,* 137 F.3d 1455, 1469 (11th Cir.1998). Plaintiff has come forward with no evidence sufficient to create a genuine issue of material fact that it was not given a fair opportunity to avoid the limitation on liability included in the Bill of Lading. Moreover, where a shipper such as Plaintiff chooses to insure its cargo through an independent insurance company, courts have found that the party has made a conscious decision not to opt out of COGSA's limitation on liability. *Travelers Indem. Co. v. Vessel Sam Houston,* 26 F.3d 895, 900 (9th Cir.1994); *see also New Hampshire Ins. Co. v. Seaboard Marine, Ltd.,* 1992 A.M.C. 279, 1992 WL 33861 (S.D.Fla. Jan.2, 1992). Accordingly, the Court finds that the limitation on liability contained in the Bill of Lading is valid and enforceable.[1]

### III. The Yacht Was a Single Package for Purposes of Limiting Defendant's Liability.

Given the Court's ruling that the limitation clause is valid, the remaining question is whether the limitation in this instance should be calculated on the basis of a "package" or a customary freight unit. Plaintiff contends that the customary freight unit is the correct basis for deter-

---

1. Plaintiff appears to argue implicitly that the $500 limitation on liability is too harsh a result given the value of the yacht. As discussed *supra,* Plaintiff had an opportunity to purchase additional coverage from the carrier and chose not to do so, presumably in part, because Plaintiff had private insurance which covered the yacht while in transport. In addition, numerous courts have applied the $500 limitation to expensive cargo, including yachts. *See e.g., SNC S.L.B. v. M/V Newark*

*Bay,* 111 F.3d 243 (2d Cir.1997)(applying $500 limitation to yacht); *New Hampshire Ins. Co. v. Seaboard Marine, Ltd.,* 1992 A.M.C. 279 (same); *Enterprise Inc. v. M/V Sam Houston,* 706 F.Supp. at 453 (same); *Island Yachts, Inc. v. Federal Pac. Lakes Line,* 345 F.Supp. 889, 890 (N.D.Ill.1971)(same); *Pannell v. United States Lines Co.,* 263 F.2d 497, 498 (2d Cir.)(same) *cert. denied,* 359 U.S. 1013, 79 S.Ct. 1151, 3 L.Ed.2d 1037 (1959).

mining liability because the yacht was not a package. First, Plaintiff claims that the Bill of Lading's definition of "package," which states that a yacht is one package, violates COGSA and cannot be enforced. Second, it argues that under the caselaw interpreting the term "package" in the context of COGSA, a genuine issue of material fact remains regarding whether this yacht was indeed a package. Finally, Plaintiff maintains that even if the Court finds that the yacht is a single package, the list attached to the Bill of Lading creates a genuine issue of material fact and precludes summary judgment because the Court cannot determine the total number of packages shipped.

### A. The Yacht Is a Package as Defined by COGSA.

"A package is a class of cargo, irrespective of size and weight, which has been prepared for transportation by the addition of some packaging that facilitates handling, but which does not necessarily enclose the goods." *Z.K. Marine, Inc.*, 776 F.Supp. at 1554 (citing *Marante Forwarding v. C.A. Naviera De Transporte Y Turismo*, 486 F.Supp. 636, 637 (S.D.Fla. 1980)). Cargo that is fully boxed or crated constitutes a package under the Act, *Taiwan Power Co. v. M/V George Wythe*, 575 F.Supp. 422, 423 (N.D.Fla.1983), while freestanding cargo that is shipped in a "loose condition" is clearly not a package. *Id.* (citing *Caterpillar Am. Co. v. S.S. Sea Roads*, 231 F.Supp. 647 (S.D.Fla.1964), *aff'd*, 364 F.2d 829 (5th Cir.1966)). In this instance, the yacht does not readily fall within either of these two categories. Accordingly, the Court must look to analogous cases to guide its analysis.

In *Z.K. Marine, Inc.*, the yachts in question were transported on cradles which, for

package purposes, were held to be analogous to skids. *Id.* at 1555. As a result, the court found that each yacht constituted a package under COGSA's limitation on liability provisions. *Id.; cf. Tamini v. M/V Jewon*, 699 F.Supp. 105, 107 (S.D.Tex. 1988) (holding that drill rig was not a package where it was not attached to skids and the freight was calculated on the basis of the rig's weight/measurements), *aff'd sub nom. Tamini v. Salen Dry Cargo AB*, 866 F.2d 741 (5th Cir.1989); *but see Island Yachts*, 345 F.Supp. at 891 (finding that the yacht shipped on a wooden cradle for lump sum fee is package). In a case closely analogous to this one, a district court addressed whether equipment shipped on four 40 foot flat racks was a package for purposes of the COGSA limitation. *Valmet Materials Handling Equip., Inc. v. Nedlloyd Lijnen B.V. Rotterdam*, 1993 A.M.C. 1243, 1993 WL 204149 (M.D.Fla. Feb.24, 1993), *aff'd* 11 F.3d 167 (1993). Because the bill of lading defined the number and kind of packages as the 40–foot flat racks, the court held that they were indeed packages and limited liability to $500. *Id.* at *3; *see also Insurance Co. of N. Am. v. M/V Xiang He*, 1993 A.M.C. 342, 345, 1990 WL 121587 (S.D.N.Y. Aug.15, 1990) (where bill of lading did not specify number of packages, but referred to helicopter on flat rack as a package, $500 limitation applies).

Plaintiff claims that there is a genuine issue of material fact regarding whether the yacht was packaged for shipment to the United States. This contention is contradicted by the survey, attached as Exhibit B to Plaintiff's Motion for Partial Summary Judgment, describing the elaborate packaging of the yacht. According to the survey, the loading of the yacht took 4 to 6 hours. (Survey ¶ 3.2).[2] The lashing

---

**2.** The Court's copy of the survey is unclear and thus it cannot determine if the loading of

the yacht began at 1300 or 1500 hours.

consisted of steel wires, turnbuckles, clamps and nylon slings. (Survey ¶ 3.4). Finally, the survey indicated that the "motoryacht was carefully covered with tarpaulin ... after [being] positioned on her wooden cradle (two pieces)." (Survey ¶ 3.5). This evidence clearly belies Plaintiff's unsupported assertion that the yacht was not packaged. Accordingly, the Court finds that the yacht was a package for purposes of COGSA.[3] *See Z.K. Marine,* 776 F.Supp. at 1555 (yachts shipped on cradles were packages); *Taiwan Power Co.,* 575 F.Supp. at 424 (pressurizer shipped on 3 wooden saddles by means of steel straps was a package); *Island Yachts,* 345 F.Supp. at 890 (yacht on shipping cradle is package).

## B. The Shipment Did Not Consist of More than One Package.

Given the Court's finding that the yacht is package, Plaintiff contends that a genuine issue of material fact still remains regarding the total number of packages shipped. Plaintiff suggests that the Court's analysis should begin with a review of the Bill of Lading and that all ambiguities should be resolved against the carrier. *Sony Magnetic Prods., Inc. of Am. v. Merivienti,* 863 F.2d 1537, 1542 (11th Cir.1989). Plaintiff, relying upon *In re Belize Trading,* 993 F.2d 790 (11th Cir. 1993), *cert. denied,* 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994) argues that the Bill of Lading's reference to an "Attached List" raises a genuine issue of material fact regarding how many packages were shipped by Plaintiff. In essence, Plaintiff contends that even if the yacht is one package, each item on the attached list may be a separate package thus increasing Defendant's total potential liability.

The bill of lading in *Belize Trading* indicated that the shipment consisted of three containers of electronic equipment. *Id.* at 791. Nevertheless, plaintiff maintained that the appropriate basis for assessing damages was on the basis of the number of cartons shipped within each container. *Id.* Plaintiff argued that the packing lists and invoices supplied to the shipper clearly indicated the number of cartons being shipped. *Id.* The court held that COGSA required the carrier to indicate the number of cartons being shipped as declared by the shippers in the packing lists they had furnished to the carrier. Thus, the court applied the $500 limitation to each carton. *Id.*

*Belize Trading,* however, is clearly distinguishable from the case presently before the Court. Here, the export freight invoice lists only one item to be shipped. (*See* Aff. of A.O. Fred Barron, Ex. A). Moreover, the charges reflected on the invoice are calculated on a lump sum basis for one unit being shipped: "USD 13000.00 × 1.000." Unlike the invoice in *Belize Trading,* this export freight invoice makes no mention of additional cartons or packages. Accordingly, the holding of *Belize Trading* is inapplicable.

The Court also finds Plaintiff's argument regarding the attached list unpersuasive because of the nature of the items contained on that list. The list is entitled "Extra Equipment." (*See* Plaintiff's Opposition in Response to Defendant's Motion for Partial Summary Judgment, Ex. A). It delineates certain features on the yacht including air conditioning, a generator, fire extinguisher, internal sockets (american type), and autopilot nautiradar. (*See id.*). The equipment itemized on the list is clearly a description of features included

---

**3.** Because the Court finds that there is no genuine issue of material fact regarding the yacht's status as a package under COGSA, it need not decide if the Bill of Lading's definition of a package is impermissible under § 1303(8) of COGSA.

on the yacht and cannot be construed as separate packages pursuant to COGSA. Perhaps the most obvious non-package item on the list are the internal electrical sockets of the yacht.

In addition, Exhibit B to Plaintiff's Motion for Summary Judgment contains the condition survey performed prior to shipment and is further evidence that neither party intended that the equipment on the list be treated as packages. Although the document contains the extra equipment list relied upon by Plaintiff, it also includes a list of standard equipment which included fire extinguishers, a compass, fuel tanks, bathroom sink, curtains and over 100 other pieces of standard equipment. The standard equipment list, like the extra equipment list, describes features of the yacht itself, not additional packages being shipped with the yacht. If, by analogy, the Court applied Plaintiff's argument to the shipment of a car, Plaintiff would contend that power steering, a spare tire and spark plugs were all separate packages in addition to the body or frame of the car. The Court finds this argument completely unavailing, and Plaintiff offers no caselaw supporting this position or interpretation of the term "package."

Moreover, the freight invoice does not provide any support for Plaintiff's interpretation. The invoice states that Plaintiff was charged a lump sum amount. It reflects no additional charges for the extra or standard equipment. Accordingly, the Court should find that based upon the evidence presented, including the invoice, the Bill of Lading and the survey, there is no genuine issue of material fact that the parties agreed to ship only one unit, the yacht. Plaintiff has failed to come forward with any evidence sufficient to create a genuine issue of material fact and thus, partial summary judgment should be granted in favor of Defendant.

### RECOMMENDATION

For the foregoing reasons, this Court recommends that Defendant's Motion for Partial Summary Judgment Against Plaintiff Marco Realini be GRANTED.

The parties have ten (10) days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Lenore C. Nesbitt, United States District Judge. *See* 28 U.S.C. § 636 (1991). Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir.), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988). November 5, 1998.